# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

GRANT WAYNE ROSS,         )
                                   )
         Plaintiff,      )
vs.                           )         NO.  CIV-15-0935-HE
                                   )
THE CITY OF OKLAHOMA CITY,  )
OKLAHOMA, ET AL.,         )
                                   )
         Defendants.  )

## ORDER

This case arises out of a traffic stop on September 18, 2014.  Plaintiff Grant Wayne Ross was driving his vehicle east on I-40 near its intersection with Council Road, in Oklahoma City, when he was pulled over by Oklahoma City police officer Keegan Burris. The stop became confrontational.  Officer Burris ultimately issued citations to plaintiff for illegal lane change and for not having a driver's license in his possession.   Those charges were later dismissed, but this suit resulted.  It was originally filed in Oklahoma state court and removed to this court.

Here, plaintiff asserts three claims, or groups of claims.  He asserts a claim against the City of Oklahoma City under the Oklahoma Governmental Tort Claims Act, 51 Okla. Stat. §§ 151 *et seq.* (the "OGTCA"), seeking to hold it liable for several torts allegedly committed by Officer Burris during the course of the stop.  These alleged torts include false arrest, excessive force, assault and battery and a "false narrative" claim which the parties appear to

view as one for tortious interference with contract.[1]  Second, he asserts a state law claim against defendant Burris for "false narrative" or tortious interference with contract, and perhaps for negligence, premised on the theory that these acts were outside the scope of Officer Burris's employment and hence not barred by the OGTCA.  Finally, his third claim is asserted against Officer Burris under 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights.

Both the City and Officer Burris have moved for summary judgment on the claims against them.  Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (citation omitted).  Applying this standard to the parties' submissions, the court concludes both motions should be granted.

Factual Background

The background facts material to the determination of these motions are substantially undisputed.  The circumstances are somewhat unusual in that there are audio and video recordings of various aspects of the incident, including an audio recording on plaintiff's cell

---

[1]*Plaintiff's identification of his claims is not altogether clear.  Further, while his petition made reference to an illegal search, his briefs now clarify that he is not asserting any claim based on a search of his vehicle.*

phone, the dash camera in Officer Burris's patrol car, and an audio recording of plaintiff's later interview with an Oklahoma City police supervisor.

As indicated above, plaintiff was driving on I-40 in the vicinity of two other cars which were racing each other and moving back and forth in traffic. As plaintiff passed Officer Burris's vehicle, which was parked on the side of the highway, plaintiff "flipped him off."[2] The officer began following plaintiff and fairly quickly observed what Burris viewed as an unsafe lane change by the plaintiff.[3] He pulled over the plaintiff. The initial discussion between plaintiff and the officer was friendly. The officer asked for his driver's license and plaintiff indicated he did not have it, and that his wife had lost it. Plaintiff offered other identification. Officer Burris told plaintiff that he pulled him over for an unsafe lane change. He then asked if plaintiff had anything against the police and asked why plaintiff had flipped

---

[2]*Plaintiff's response brief does not directly deny this fact but, in his deposition, plaintiff denies flipping off the officer, and that would ordinarily be sufficient to create a fact question as to what occurred. However, the contemporaneous audio recording on plaintiff's phone has him answering, in response to the officer's question of why he flipped him off, "I do that with almost everyone." Doc. # 30-8. Later, when plaintiff contacted, and was interviewed by, the OKC police department watch commander, plaintiff's own unprompted narrative of the event was: "As I always do—I don't know why I do it I just do . . . I flipped him off. I do it with almost every police officer—my wife gets onto me for it—but that's—I've done it for years. It's just habit." Given that two of plaintiff's own recorded statements explicitly acknowledge the "flipping," the court declines to attach any significance to plaintiff's unexplained deposition denial and, as indicated, his response brief doesn't argue the contrary. See Scott v. Harris, 550 U.S. 372, 380 (2007)(instructing that courts should not, for summary judgment purposes, adopt a version of the facts blatantly contradicted by the record).*

[3]*Officer Burris indicated he was concerned, due to the "flipping off" and the movements of the other vehicles, that a "road rage" incident was underway and pursued plaintiff with the intention of seeking to identify a traffic infraction that would enable him to stop plaintiff and find out the circumstances. Plaintiff argues that was not Burris's motivation and that Burris was just retaliating for the "flipping off." As discussed later in this order, it is unnecessary to determine exactly what motivated Officer Burris's conduct in following and stopping plaintiff.*

him off.  After plaintiff explained ("I do that with almost everyone"), the officer asked for proof of insurance, which plaintiff said he had and that it was in the glovebox.  Plaintiff disclosed there was an unloaded gun in the glovebox as well.  After securing the insurance information, the officer asked plaintiff to come with him back to the patrol car while he ran a license check.  Plaintiff declined to get out of the car and began asking why he should do so.  The officer explained that, since plaintiff did not have his driver's license in the car and had the gun, he wanted the plaintiff with him in the patrol car for officer safety.  The discussion became more contentious from that point forward, with the officer repeatedly insisting that plaintiff join him in the patrol car, plaintiff repeatedly resisting, and ultimately the officer ordering plaintiff from the car.

Plaintiff eventually got out of the vehicle while continuing to argue with the officer.  The officer placed plaintiff against the back of his vehicle and handcuffed him.  He was then placed in the patrol car for the balance of the encounter.  At plaintiff's request, Burris summoned a supervisor to the scene.  Plaintiff initially declined to sign the tickets which were issued, which constituted his agreement to appear.  Following further discussions between plaintiff and the officers, he eventually signed the tickets under a purported reservation of rights based on § 1-308 of the Uniform Commercial Code.

At the point where the traffic stop ended, Officer Burris still had possession of plaintiff's military ID.  Three days later, the police department contacted plaintiff to so advise him, and told him he could pick it up, which he did.

The municipal charges against the plaintiff were later dismissed.   However, three

weeks after the incident, plaintiff was discharged as a security guard for Boeing. According to Ross, he was told by his supervisor that Boeing felt that if he was going to argue with a police officer on the side of the road, Boeing did not want him representing the company. Boeing's decision was apparently based on an investigation of the incident by an Air Force investigator. The special agent interviewed Officer Burris and later sent an email to plaintiff's supervisor which included a copy of the police report and a description of the "gist" of her conversation with Burris.

## Discussion

The City of Oklahoma City argues it is entitled to judgment on the OGTCA claim against it. It argues the traffic stop of plaintiff was justified on the basis that Officer Burris had probable cause to believe plaintiff committed a traffic violation, specifically an unsafe or illegal lane change. It also argues that Officer Burris's further actions were reasonable in light of plaintiff's conduct and the surrounding circumstances.

Under Oklahoma law, an officer is authorized to arrest a person for a public offense committed in the officer's presence. 22 Okla. Stat. § 196(1). Both federal and state constitutional law authorize a traffic stop if there is probable cause to believe a traffic violation has been committed. See Gomez v. State, 168 P.3d 1139, 1142 (Okla. Crim. App. 2007).[4] Here, plaintiff suggests that probable cause was lacking or at least that there is a

---

[4]*The standards for false arrest or false imprisonment under state law are similar to those for Fourth Amendment constitutional violations. Walker v. Oklahoma City, Case No. 98-6457, 2000 WL 135166 at \*9 (10th Cir. 2000) (unpublished) ("[T]here was probable cause to arrest [plaintiff] . . . [T]hat conclusion defeats not only [plaintiff]'s Fourth Amendment claims . . . but also her claims for malicious prosecution and false imprisonment.").*

factual dispute as to it which would preclude summary judgment. He does so on the basis that there is a factual dispute over whether his lane change was "safe" and on the further basis that there is a factual dispute as to the officer's reason for the stop.

There may well be a factual dispute as to whether plaintiff could have or should have been found guilty of violating the municipal ordinance had the charges been pursued, but that is not the issue for present purposes. Rather, the question here is whether the officer had probable cause to believe a violation occurred and hence a basis for the stop. The undisputed evidence—the dash cam video showing plaintiff's lane change—shows the lane change to have been very quickly executed and without signaling for 100 feet before it was executed. The undisputed facts show at least the existence of probable cause as to a potential law violation, and that is sufficient to justify the stop.

For present purposes, it does not matter that the 100-foot requirement was a matter of state law (47 Okla. Stat. § 11-309(2)), rather than the municipal ordinance with which plaintiff was charged. See Morris v. Noe, 672 F.3d 1185, 1193 (10th Cir. 2012) ("That is, an arrest is lawful as long as probable cause exists for *some* offense.") Officer Burris had the authority to investigate and pursue violations of state law as well as municipal ordinances. Green v. United States, 386 F.2d 953, 955 (10th Cir. 1967) ("Under Oklahoma law a city police officer is a state officer . . . and may arrest without warrant when a public offense is committed in his presence." (citing 22 Okla. Stat. § 196 and Lawton v. Harkins, 126 P. 727 (Okla. 1912))). The undisputed evidence shows at least probable cause to believe plaintiff executed the lane change without signaling for 100 feet before executing it.

As a result, whether the 100-foot requirement is viewed as a guide to what was "safe" under the municipal ordinance or as an independent provision of state law, probable cause existed sufficient to justify the stop.

At least initially, plaintiff sought to avoid this conclusion by arguing that Officer Burris's actions were not motivated by concern with a traffic violation, but were in retaliation for plaintiff flipping him off.[5] However, in a later brief, plaintiff appears to acknowledge that the motive of the officer in initiating the stop is irrelevant if probable cause otherwise existed.[6] The latter position is correct. <u>Whren v. United States</u>, 517 U.S. 806 (1996); <u>Overall v. State</u>, 910 P.2d 1087 (Okla. Civ. App. 1995). It does not matter whether Officer Burris's motivation for the stop was to investigate a possible road rage situation, as the officer testified, or whether it was to punish plaintiff for flipping him off, as plaintiff argues. Nor does it matter that Officer Burris was looking for, or waiting for, a technical traffic violation to justify the stop, as he acknowledged he was. So long as probable cause existed to believe the violation occurred, the officer was justified in stopping plaintiff's vehicle. Here, as indicated, the undisputed facts show probable cause to have existed.[7]

---

[5]*Plaintiff's response to City motion [Doc. #36] ("The controlling issues in our case are: whether or not the arrest of the Plaintiff was lawful, and the <u>actual motive and intent</u> of the Defendant Officer in stopping and arresting the Plaintiff." (Emphasis in the original.))*

[6]*Plaintiff's response to the Burris motion [Doc. #40] ("We are not questioning law cited by defendant, that 'The ulterior motives of police officers are irrelevant as long as there is probable cause for the stop.'" [citing case]).*

[7]*As probable cause for the stop existed, it is unnecessary to address defendant's argument that something less than probable cause—reasonable suspicion—would have sufficed as a justification for the stop under state law.*

Plaintiff's first claim appears to embrace alleged torts beyond the false arrest.[8] He challenges the officer's use of handcuffs during his detention, claiming there is a factual dispute as to whether there was a need for them. Public officers may use force in the performance of their legal duties. 21 Okla. Stat. § 643(1). They must, however, use "only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest." <u>Morales v. Oklahoma City</u>, 230 P.3d 869, 879–80 (Okla. 2010). Here, the undisputed facts show that the officer was confronting a driver who did not have a driver's license in his possession—a violation of state law.[9] It is also undisputed that the driver had a gun in the glove compartment. Plaintiff asserted the gun was unloaded and it may well have been. But the officer was not obliged to assume the gun was the only weapon within the plaintiff's reach or to ignore the possibility that the gun could be loaded and fired in a matter of seconds. Finally, the undisputed facts, as reflected by the video and audio recordings, establish that plaintiff refused the officer's request to come sit in the patrol car while he ran his records check. Plaintiff was resistant to the officer's request, became argumentative when the officer explained the basis for the request, and became resistant and defiant when the officer

---

[8]*Some of the allegations of the complaint are wholly unsupported by any evidence. For example, the complaint alleges the officer <u>falsely</u> accused plaintiff of giving him the finger and that plaintiff was "beaten" by the officer.*

[9]*Plaintiff's argues that offenses for driving without a license are routinely dismissed if the driver can produce a license by the time of trial/hearing. But that is not the situation involved here, where the question is the propriety of what happened at the time of the stop rather than the ultimate disposition of the charges.*

instructed, and ultimately ordered, plaintiff to get out of his vehicle. As plaintiff put it in his narrative of the incident, with a bit of understatement: "I was a little belligerent."[10] In these circumstances, the undisputed facts show the officer's conduct to have been justified. There is no permissible inference from the evidence presented that Officer Burris exceeded the level of force necessary for performance of his duties. See Kilgore v. Stroud, 158 F. App'x 944, 953 (10th Cir. 2005) (affirming district court's finding that police officer was justified in handcuffing appellant "until it was determined what role he played in the matter.").

To the extent that plaintiff is pursuing a tort claim based on the use of excessive force, the facts reflected by the dash cam video do not support it. They show plaintiff was not cooperating in the officer's effort to pat search plaintiff for weapons or to handcuff him. The officer pressed plaintiff against his vehicle as the officer applied the cuffs, but he did not "slam" the plaintiff against it nor did he otherwise act in a way that would support an inference of unreasonable force. It is undisputed that plaintiff did not suffer physical injury of any kind.

In short, the undisputed facts show the traffic stop was justified and that the actions taken by the officer thereafter were reasonable given the circumstances that the officer confronted. The "false narrative" claim is unsupported, as discussed below. Therefore, summary judgment is appropriate for the City of Oklahoma City as to the OGTCA claim.

Officer Burris has moved for summary judgment on plaintiff's second claim, for

---

[10]*See Doc. #30-5,the audio recording of plaintiff's call to the watch commander.*

"false narrative" or tortious interference with contract, on the basis that anything Burris did to report the incident was within the scope of his employment (filing reports; sharing information with other law enforcement officials) and hence provides no basis for a claim against him due to the OGTCA. He also argues that plaintiff's at-will employment relationship will not support a tortious interference claim and that plaintiff has no admissible, non-hearsay evidence to support a suggestion that Officer Burris did anything to interfere with plaintiff's employment. Plaintiff does not respond to the arguments and has therefore conceded the claim. Summary judgment will be entered for Officer Burris on the tortious interference claim.

Finally, Officer Burris has moved for judgment as to the third claim, the § 1983 claim asserting violation of plaintiff's Fourth and Fourteenth Amendment rights. He asserts he is entitled to qualified immunity if plaintiff otherwise has a valid claim.

As to the Fourth Amendment claim, summary judgment for Burris is appropriate for largely the same reasons as were discussed above in connection with the state law false arrest claim. The Fourth Amendment protects citizens against "unreasonable searches and seizures" conducted by law enforcement officials. Traffic stops are "seizures" within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). A traffic stop is justified at its inception if the officer has a reasonable articulable suspicion that the motorist has violated a traffic regulation of the particular jurisdiction. United States v. Winder, 557 F.3d 1129, 1134 (10th Cir. 2009). A traffic stop may be essentially an investigative detention (i.e. a Terry stop) or it may be, or become, an arrest. United States

10

v. White, 584 F.3d 935, 944–45 (10th Cir. 2009). The question is whether the stop was "objectively justified" and the officer's subjective motives are irrelevant. Id. at 945. The stop must be reasonably related in scope to the circumstances which justified the stop in the first place. United States v. Chavez, 534 F.3d 1338, 1343 (10th Cir. 2008).

Plaintiff's challenge to the stop and detention is directed principally to the basis for the stop. As discussed above, the undisputed facts establish that reasonable suspicion (and indeed, probable cause) existed as a basis for the traffic stop. The officer's actual motivation for making the stop is irrelevant.

Plaintiff does not challenge the duration of the detention, but challenges the use of handcuffs during the encounter. Officers may, in appropriate circumstances, take steps to protect their personal safety and maintain the status quo during a Terry stop, and may do so without necessarily turning the encounter into a custodial arrest. Those steps may include, in appropriate circumstances, the use of handcuffs or the detention of suspects in law enforcement vehicles. Cortez v. McCauley, 478 F.3d 1108, 1130 (10th Cir. 2007).

Here, the undisputed facts establish that Officer Burris confronted a driver whose first action upon seeing the officer, while driving by, was to "flip him off." That salute may have been routine conduct for Mr. Ross, but would have clearly signaled to a reasonable officer on the receiving end of it an above-average level of hostility to law enforcement, or at least a lack of respect for it. Plaintiff was found to be driving without a driver's license. He had a gun in the glove box. The driver resisted a request to move to the patrol vehicle, and became argumentative. As the officer became more forceful in his request for plaintiff to get

out of his vehicle, plaintiff became more belligerent.  He got out only after the officer issued

multiple direct and forceful orders to do so.  In these circumstances, the court can discern no

basis for an inference that the officer's conduct in handcuffing the plaintiff or putting him

in the patrol car was objectively unreasonable, given the circumstances which the officer

faced.

In sum, the undisputed facts show the absence of a Fourth Amendment constitutional

violation.  It is therefore unnecessary to consider whether a broader qualified immunity

analysis might also shield the officer's conduct.

To the extent that plaintiff asserts a Fourteenth Amendment due process claim,

apparently based on the detention of his military ID property for three weeks, judgment is

appropriate for Officer Burris.  Defendant argued that a property damage claim arising from

the alleged misconduct of officers does not arise to the status of a Due Process violation if

state law provides an adequate remedy to redress the injury, relying on Parratt v. Taylor, 451

U.S. 527 (1981).  Here, it is undisputed that the City discovered the ID had been retained,

contacted plaintiff, and allowed him to pick it up.  Plaintiff makes no effort to explain how

that process denies him redress.  Indeed, plaintiff's response does not address the issue at all

and thus concedes the claim.

Conclusion

For the reasons stated, the motions for summary judgment of the City of Oklahoma

City [Doc. #30] and of Officer Burris [Doc. #33] are **GRANTED**.  Judgment will be entered

in defendants' favor as to all claims.

**IT IS SO ORDERED**.

Dated this 25th day of May, 2016.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE